IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ALLEN CARLTON, JR. § | |
|     Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:05-CV-711-Y |
| § | |
| C. FEARNEYHOUGH #3231, officially § | |
| and individually, DONALD STEELE, JR., § | |
| J.D. GARWACKI, and FAMILY § | |
| DOLLAR STORES OF TEXAS, L.P., § | |
|     Defendants. § | |

## ORDER GRANTING MOTIONS FOR SUMMARY
## JUDGMENT AND DENYING MOTION TO STRIKE

Pending before the Court are three motions: (1) defendant C. Fearneyhough's Motion for Summary Judgment [doc. # 61], filed October 30, 2006; (2) defendant J.D. Garwacki's Motion for Summary Judgment [doc. # 64], filed October 31, 2006; and (3) Fearneyhough's Motion to Strike Plaintiff's Summary Judgment Evidence [doc. # 71], filed December 4, 2006. After consideration, the Court GRANTS the summary-judgment motions and DENIES the motion to strike as moot.

## I. BACKGROUND

On the night of November 4, 2004, plaintiff Allen Carlton Jr. was in the parking lot of a Family Dollar Store. After talking to Jim Blackwell, who was protesting in front of the store, Carlton waited for another friend, Oscar Stuphen. Apparently, the manager of the store, Donald Steele Jr., called the police after he believed Carlton and Blackwell were harassing other customers in the parking lot. Fearneyhough, a police officer with the Fort Worth Police Department, responded to the call. Steele told Fearneyhough that although Blackwell had left, Carlton was still in the parking lot. At the time, the parking lot had signs prohibiting solicitors, peddlers, and loitering.

Based on Steele's complaint, Fearneyhough approached Carlton and asked him for his identification. Carlton admits he did not comply. To complete his investigation and based on his suspicion that Carlton had committed an offense, Fearneyhough handcuffed the much-larger[1] Carlton with his hands behind his back and placed him in his patrol car.

Garwacki, Fearneyhough's back-up officer, arrived at this point. Fearneyhough asked Garwacki to see if Carlton had any identification on him. When Garwacki approached the patrol car, Carlton complained that the handcuffs were too tight. Garwacki asserts that Carlton was lying on his back in the car with most of his weight on his hands. Garwacki told Carlton to get out of the car, but Carlton again refused to comply. Garwacki was able to get Carlton's identification information while Carlton was still in the car, and Fearneyhough determined that Carlton had a pending arrest warrant. Carlton again complained that the handcuffs were too tight. When Garwacki began to try to remove Carlton from the car, Carlton got out on his own. Carlton alleges that Garwacki, in attempting to get Carlton out of the car, put his thumb on a pressure point in Carlton's neck. Garwacki checked the handcuffs and determined that they were not too tight. Based on the outstanding arrest warrant, Fearneyhough arrested Carlton and issued him two citations for violating a city ordinance and for failure to identify. Garwacki returned Carlton to the patrol car and told him how to sit so there would be less pressure on the handcuffs. Garwacki claims Carlton again sat so most of his weight was on his hands. Carlton asserts that he was intentionally pushed into the car on his hands.

Carlton filed suit against Fearneyhough and Garwacki arguing that they violated the Eighth Amendment, used excessive force, participated in a malicious prosecution, were involved in a

---

[1]Carlton weighed approximately 250 pounds, and Fearneyhough weighed 160 pounds.

2

conspiracy with Steele, and intentionally inflicted emotional distress by their actions.[2] Garwacki and Fearneyhough assert that they are entitled to immunity on Carlton's claims and, thus, judgment as a matter of law.

## II. STANDARDS OF REVIEW

### A. SUMMARY JUDGMENT

Summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden of demonstrating that it is entitled to a summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party need not produce evidence showing the absence of an issue of fact with respect to an issue on which the nonmovant bears the burden of proof, however. Rather, the moving party need only point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmovant's claim. *See id.* at 323-25.

When the moving party has carried his summary-judgment burden, the nonmovant must go beyond the pleadings and by his own affidavits or by the depositions, answers to interrogatories, or admissions on file set forth specific facts showing that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e). This burden is not satisfied with some abstract doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the evidence is merely colorable or is

---

[2]Although Carlton also raised claims for negligence and defamation against "all defendants," it is clear that these claims are solely directed to the actions of Steele and Family Dollar. This Court previously dismissed Carlton's negligence and intentional-infliction-of-emotional-distress claims against Family Dollar and Steele.

3

not significantly probative, summary judgment may be granted.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

In making its determination on the motion, the Court must look at the full record in the case. FED. R. CIV. P. 56(c); *see Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988).  Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992).  Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim."  *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

B. QUALIFIED IMMUNITY

To the extent Carlton seeks money damages directly from the officers for their actions taken under color of state law, the officers may invoke their right to qualified immunity.  *See Hafer v. Melo*, 502 U.S. 21, 26 (1991).  Public officials performing discretionary functions enjoy immunity from suits for damages, provided their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved at the earliest possible stage in the litigation.  *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

When this Court is called upon to confer qualified immunity upon a government official accused of violating a federal constitutional or statutory right, the Fifth Circuit requires the Court first to employ a three-part inquiry.  *See Conroe Creosoting Co. v. Montgomery Cty., Tex.*, 249 F.3d 337, 340 (5th Cir. 2001).  The burden is on the plaintiff to show the inapplicability of the qualified-

4

immunity defense. *See McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). First, the Court must determine whether the plaintiff has actually alleged the violation of a federal constitutional or statutory right. *See id.* If the Court determines that he has, the Court must then decide whether, at the time of the alleged violation, that right was so clearly established that a reasonable government official in the defendants' situation would have understood that his conduct violated that right. *See Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993).[3] Finally, the court must "determine whether the record indicates that the violation occurred, or gives rise to a genuine issue of material fact as to whether the defendant actually engaged in the conduct that violated the clearly established right." *Conroe Creosoting*, 249 F.3d at 340. Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

## C. OFFICIAL IMMUNITY

Regarding state-law claims, government employees are entitled to official immunity from suit arising from the performance of their discretionary duties performed in good faith as long as they were acting within the scope of their authority. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 653-58 (Tex. 1997). Official immunity is an affirmative defense; thus, the officers must conclusively prove each element of the defense to be entitled to summary judgment. *See Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000).

A discretionary function—as distinguished from a ministerial duty, which requires rote obedience to orders or performance of a function to which the actor has no choice—involves a

---

[3]This second part of the test is often referred to as "objective reasonableness." Thus, "whether an official protected by qualified immunity may be held personally liable turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639(1987).

5

personal deliberation, decision, and judgment.  *See Chambers*, 883 S.W.2d at 654.  An officer acts in good faith if a reasonably prudent officer, under the same circumstances, could have believed that his actions were correct.  *See id.* at 656.  An officer acts within the scope of his authority when he discharges the duties generally assigned to him.  *See id.* at 658.

To obtain official immunity on summary judgment, an official must prove that a reasonably prudent official might have believed that his action was appropriate under the circumstances.  *See id.*  Even if an official's actions were taken negligently, that would not be sufficient to defeat a showing of good faith.  *Se id.* at 655.  The test for good faith is objective and is substantially derived from the test for objective reasonableness in a qualified-immunity claim for federal constitutional violations.  *See Roe v. Tex. Dep't of Protective & Regulatory Servs.*, 299 F.3d 395, 413 (5th Cir. 2002).

## III. FEDERAL CLAIMS

Carlton argues that Fearneyhough and Garwacki violated the Eighth Amendment in their treatment of him.  Claims invoking the Eighth Amendment are limited in scope to convicted prisoners and do not apply to pretrial detainees such as Carlton.  *See Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996).  Any relief Carlton could receive for Fearneyhough's and Garwacki's "cruel and inhumane" actions would flow from the Fourteenth Amendment.  *See Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525-26 (5th Cir. 1999); *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc).  But Carlton has failed to plead that his Fourteenth-Amendment rights were violated.  Thus, Carlton has failed to allege the violation of a federal constitutional right.  Even if Carlton had raised a Fourteenth-Amendment claim, he has admitted, as discussed below, that he

6

suffered no physical injury during his arrest. This forecloses the possibility that Fearneyhough's and Carlton's actions were sufficiently harmful to establish the requisite deliberate indifference for this type of claim. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000); *Olabisiomotosho*, 185 F.3d at 526-27.

Carlton also asserts that Fearneyhough and Garwacki used excessive force. In support of this claim, Carlton states that the handcuffs were too tight, Garwacki pressed his thumb to Carlton's neck when getting him out of the car, and Fearneyhough hit Carlton in the face with a wad of paper. To prevail on an excessive-force claim, Carlton bears the burden to show (1) an injury, (2) that resulted directly and only from the use of force that was excessive to the need, and (3) the force used was objectively unreasonable. *See Goodson v. Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000). Although a showing of a significant injury is not required, a plaintiff must have suffered at least some form of injury. *See Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). The injury must be more than de minimis and must be evaluated in the context in which the force was deployed. *See id.*

Carlton admits that he suffered no injury as a result of the arrest. (Fearneyhough App. at 10.) Further, proof of tight handcuffs or of a hold used to get a non-compliant detainee out of a patrol car without evidence of more does not amount to excessive force. *See Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001); *Sandefer v. City of Quinlan*, No. 3:00-CV-1956, 2001 WL 984895, at *4-5 (N.D. Tex. Aug. 14, 2001). Carlton has failed to allege a prima-facie case.

IV. STATE CLAIMS

Carlton asserts that Fearneyhough[4] maliciously prosecuted him by issuing the two citations solely because Carlton is black.  However, Carlton admits that he has no evidence that Fearneyhough took any action or made any decision based on Carlton's race. (Fearneyhough App. at 10.)  Thus, Carlton has failed to allege a prima-facie case of malicious prosecution. *See, e.g., Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997) (discussing elements of malicious-prosecution claim).

Likewise, Carlton's claim for intentional infliction of emotional distress fails.  This tort is available only if a plaintiff has no other recognized theory of redress.  Thus, if the crux of a plaintiff's complaint is another tort, intentional infliction of emotional distress is an improper claim. *See Hoffman-La Roche, Inc. v. Seltwanger*, 144 S.W.3d 438, 447 (Tex. 2004).  The gist of Carlton's complaint against Fearneyhough and Garwacki is their use of force during the incident.  Thus, this claim is not cognizable.

Carlton alleges that Fearneyhough, Garwacki, and Steele were involved in a conspiracy to violate Carlton's rights.  But because Fearneyhough and Garwacki are entitled to judgment as a matter of law on all of Carlton's other claims against them, they are also entitled to summary judgment on Carlton's conspiracy claim. *See Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).

## V. CONCLUSION

Carlton has failed to show the inapplicability of Fearneyhough's and Garwacki's assertions of qualified immunity.  Fearneyhough and Garwacki also have proven their right to official immunity.  Accordingly, they are entitled to judgment as a matter of law as to Carlton's claims

---

[4] Although Carlton asserts Garwacki was involved in the malicious prosecution, Garwacki was not involved in issuing the citations to Carlton.

8

against them.[5]

SIGNED March 22, 2007.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[5] Because Fearneyhough is entitled to summary judgment even considering the objected-to portions of Carlton's summary-judgment evidence, the Court DENIES Fearneyhough's motion to strike as moot.

9